THAD JONES, administrator, v. A. C. NORRIS et al.

(Filed 11 March, 1908).

1. **Deeds and Conveyances—Mortgagor and Mortgagee—Mistake of Draughtsman—Evidence.**

When the defense to the foreclosure of a mortgage, in an action brought by the plaintiff's intestate, was that the mortgagee did not intend it to be operative after her death, and that through mistake of the draughtsman it did not therein so appear, the defendant's evidence fails to show such mistake when he testifies "that it was written in the terms directed by the mortgagee; that he read it over to her and she said it was as·she wished."

2. **Deeds and Conveyances—Ambiguities—Construction.**

The use of the expression in a mortgage that it "is not collectible after my death" may, by parol, be shown to apply to the death of the mortgagee, as the word "my," taken in connection with the balance of the sentence, is ambiguous and incapable of a reasonable meaning.

3. **Deeds and Conveyances—Evidence, Parol, Admissible When.**

Parol evidence is competent, as not varying or contradicting the written instrument, to show that the words "my death" referred to the death of the mortgagee, when used in the following expression, contained in a mortgage: "If this mortgage is not settled before my death, afterwards it is not collectible."

4. **Deeds and Conveyances—Mortgagor and Mortgagee—When Mortgage Becomes Unenforcible Under Its Terms—Note Secured—Evidence.**

When it is conceded that a mortgage is no longer enforcible, owing to the happening of the contingency under which it was to

be inoperative, and it appears from a reasonable construction that the debt secured by it was included, the collection of the notes given as evidence of the mortgage debt is not enforcible between the parties.

CIVIL ACTION, tried before *Biggs, J.,* and a jury, at November Term, 1907, of the Superior Court of DUPLIN County.

The defendant Norris, on 10 August, 1904, executed to Mrs. Susan E. Thigpen a mortgage on real estate to secure the payment of four notes, the consideration being the purchase money of the land mortgaged. Following the description of the land are the words: "It is expressly understood that, if this mortgage is not settled before my death, afterwards it is not collectible; it is in force, though, until my death." The mortgagee died intestate before either of the notes was paid. Plaintiff, her administrator, brought this action for the purpose of foreclosing the mortgage. Defendants admitted the execution of the notes and mortgage, and by way of defense alleged that the words "my death" referred to the death of the mortgagee; that this was so understood by the parties at the time the mortgage was executed; that by mistake of the draughtsman the words "Susan E. Thigpen," between "my" and "death," were omitted from the mortgage. The court submitted to the jury two issues:

"1. Were the words 'Susan E. Thigpen,' between the words 'my' and 'death,' in the mortgage, omitted from the same by mistake and inadvertence of the draughtsman, as alleged?

"2. To whom does the word 'my,' before 'death,' in said mortgage refer?"

There was evidence tending to show declarations made by the mortgagee at the time the mortgage was executed, that, if she died before the notes were paid, she did not wish them collected. The draughtsman was introduced and testified: "She said she wanted them fixed so that, if they were not paid during her lifetime, they could never be collected; that she would rather give the land to defendants than anyone else; that they had been very kind to her. In consequence of what intestate

said, I then inserted in the mortgage, after the description and before the *habendum,* the following: 'It is expressly understood that, if this mortgage is not settled by my death, afterwards it is not collectible; it is in force, though, until my death.' After making this insertion, I then read it to her again as amended. She then said it suited her, and repeated what she had said before. Defendants then signed the mortgage and the notes, and I probated the same and handed them to intestate. By the words 'my death,' as I wrote them in the mortgage, I meant the death of Susan E. Thigpen, intestate of plaintiff. I intended that 'my death,' as written in the mortgage, should refer to Susan E. Thigpen, and no other person." Plaintiff objected to the admission of this evidence, and excepted. The jury found the issues in accordance with defendant's contention. Plaintiff moved for judgment upon the pleadings and verdict. Motion denied, and plaintiff excepted. Judgment was rendered for defendant, to which plaintiff excepted and appealed.

*H. D. Williams* for plaintiff.
*Slevens, Beasley & Weeks* for defendants.

CONNOR, J., after stating the case: We are of the opinion that the defendants' evidence failed to show any mistake of the draughtsman in writing the mortgage. He testifies that it was written in the terms directed by the mortgagee, and that he read it over to her and she said it was as she wished. *Green v. Sherrod,* 105 N. C., 197. The expression was, however, ambiguous, and parol evidence was competent to explain its meaning. While it is true that it is the mortgagor who is speaking through the draughtsman, and usually the pronouns "I" or "my" refer to the actor or speaker, the connection in which they are used may sometimes make it doubtful to whom they refer. To interpret the word "my," as used in this mortgage, to refer to the mortgagor, would give the entire sentence no reasonable meaning. A mortgagor could not impose upon

the mortgagee such a condition.  He owed the debt uncon-
ditionally, and could not, without the consent of the mort-
gagee, make the payment of it dependent upon his living until
it was paid.  In any aspect of the case, the expression is am-
biguous.  Conceding that it is doubtful whether the contin-
gency upon which the notes were to become noncollectible was
the death of the mortgagor or mortgagee, "parol evidence is
admissible to show the situation of the parties and the cir-
cumstances under which a written instrument was executed
for the purpose of ascertaining the intention of the parties and
properly construing the writing."  The testimony did not con-
tradict, add to, or alter the writing.

In *Braswell v. Pope,* 80 N. C., 57, parol evidence was held
admissible to show that, at the time the note in controversy
was signed, there was an agreement between the parties that
it should be surrendered upon certain contingencies.  Here
the parties agreed that, if the mortgage debt was not paid
during the lifetime of the creditor, it should not be collectible.
This agreement was collateral to the notes—left them in full
force and effect, but provided that, upon the contingency of
the creditor dying before their payment, they were not to be
collected.  In reducing this agreement to writing the lan-
guage used was ambiguous.  We can perceive no good reason
why the declarations of the parties, made at the time the mort-
gage was executed, cannot be shown to explain the ambiguity.
The evidence is clear, reasonable and uncontradicted.  The
jury properly found that the word "my" referred to Mrs.
Thigpen.  Plaintiff says, conceding that by the clause in the
mortgage the death of Mrs. Thigpen rendered it not enforci-
ble, this agreement did not affect the personal liability of the
defendants on the notes, and that he was entitled to a personal
judgment on them.  We are of the opinion that, construing
the entire clause in the light of the declarations of the mort-
gagee, the words "afterwards it is not collectible" refer to and
include the notes.  The language used by the draughtsman is

not that of a lawyer, and must be given a construction which will effectuate the manifest intention of the parties. We concur with the opinion of his Honor. There is no reversible error.

No Error.